```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK CUMMINS FRAILEY,              )
                                   ) Civil Action No. 06 - 47J
          Plaintiff,               )
                                   ) Judge Kim R. Gibson /
     v.                            ) Magistrate Judge Lisa Pupo
                                   ) Lenihan
CORRECTIONS OFFICER CHERYL         )
CONSALVO; CORRECTIONS OFFICER      )
JOHN DOE BRIAN HOOVER;             )
CORRECTIONS OFFICER KORY           )
O'DONNNEL; CORRECTIONS OFFICER     )
DONALD CARLES; CORRECTIONS         )
OFFICER JOHN DOE #4; WARDEN        )
DONALD OTT; SUPERVISOR SHIRLEY     )
STAHLER; SUPERVISOR HOWARD         )
HORTON; COUNSELOR ALEX ELYAR;      )
ROGER FORR; BLAIR COUNTY PRISON    )
BOARD OF BLAIR COUNTY PRISON,      )

          Defendants.
```

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that the Defendants' Motion to Dismiss (doc. no. 19) be denied.

**II.     REPORT**

Plaintiff, Mark Cummins Frailey, a pre-trial detainee previously confined at the Blair County Prison (BCP), commenced this action against the following Defendants: Blair County Prison Board; Warden Donald Ott; Corrections Officer Cheryl Consalvo; Corrections Officer Brain Hoover; Corrections Officer Donald Carles; Corrections Officer Kory O'Donnell; Supervisor Shirley Stahler; Supervisor Howard Horton; Counselor Alex Elyar; and Counselor Roger Forr. Plaintiff alleges that Defendants

violated his constitutional rights by failing to protect him from an attack by another inmate.

## A. Standard of Review

Defendants filed a Motions to Dismiss (doc. no. 19). Pursuant to Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss may be granted by the court if it is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).

## B. Plaintiff's Allegations

Plaintiff alleges that he was committed to the BCP on February 24, following his arrest by the Pennsylvania State Police. While he was booked into the Jail by Corrections Officer Donald Carles, he told prison officials he was a police officer and that there probably were people in the Jail that he had arrested. Carles assured him that he would be well taken care of. Plaintiff's arrest was published in the local media and BCP inmates were exposed to this media. Plaintiff further alleges that he was questioned by Corrections Officer John Doe #4 about

his work as a police officer and he provided a detailed list of his law enforcement activities to this officer and again was assured he would be protected. Thereafter, Plaintiff was moved from a holding cell and placed in Cell Block B. Sometime thereafter he was interviewed by his counselor, Alex Elyar and told him of his work as a police officer and his concern for his safety. Counselor Roger Forr was in the office at the time and commented on Plaintiff's work as a police officer.

On Sunday March 1, 2004, while walking from the gym to Cell Block B, Plaintiff was threatened by three inmates in an adjacent cell block. Specifically, while Plaintiff was in the hall walking next to Corrections Officer Consalvo, inmate Michael Marshal James told Plaintiff that he was going to kill him. Corrections Officer Hoover also heard the threats.

The next day, Plaintiff was escorted from his cell by Defendant O'Donnell to the prisoner law library. Plaintiff contends that O'Donnell then went to James' cell and escorted him to the library where he locked both prisoners in and left the area. No corrections personnel were in the library. A few minutes later, James attacked Plaintiff from behind, knocked him to the ground and hit him in the head with his fists and another unknown object. The attack lasted approximately one to two minutes. Plaintiff was taken to the Altoona Hospital where he was diagnosed as suffering lacerations to his face which required sutures. Subsequently, James was charged with Aggravated

Assault, Assault on a Prisoner, Simple Assault, Disorderly Conduct and Harassment.

Plaintiff seeks to hold Defendants Consalvo and Hoover liable for failing to protect him by ignoring the threats made by inmate James and the other two inmates while they were escorting him from the gym on March 1, 2004. He seeks to impose liability against Defendant O'Connell for locking him into the law library with another inmate knowing Plaintiff was a police officer. He claims that Defendants Carles and John Doe #4 are liable for failing to protect him after being advised that Plaintiff was a police officer during his intake evaluation. He claims that Supervisors Stahler and Horton are liable for ignoring the threat made by inmate James and by failing to take any action to assure there was no contact between Plaintiff and James. He claims that Counselors Elyar and Forr are liable for ignoring Plaintiff's concerns for his safety. He claims that Defendant Ott and the Prison Board are liable for failing to have a policy to protect police officers incarcerated at the prison and for failing to train BCP correctional personnel how to protect such individuals.

C. <u>Liability under 42 U.S.C. § 1983</u>

Plaintiff seeks to assert liability against Defendants pursuant to Civil Rights Act, 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or

immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

As a pre-trial detainee, Plaintiff's claims invoke the protections of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520 (1979).

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process, we think that the proper inquiry is whether those conditions amount to punishment prior to an adjudication of guilt in accordance with law.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Id*. at 535 (citations omitted).

In Bell, the Supreme Court announced the following test for determining whether the conditions of confinement for pre-trial detainees violated the Fourteenth Amendment.

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably

>related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

Bell v. Wolfish, 441 U.S. at 538-539 (internal quotations and citations omitted).

The Court of Appeals for the Third Circuit reviewed this standard in Hubbard v. Taylor, 399 F.3d 150, 158-159 (3d Cir. 2005). In Hubbard, the Court of Appeals acknowledged that Bell required the courts to engage in a two-step analysis:

>we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them. Our inquiry into whether given conditions constitute "punishment" must therefore consider the totality of circumstances within an institution.

Hubbard, 399 F.3d at 159 (internal quotations and citations omitted).

Using this analysis, the Court cannot conclude that Plaintiff cannot state a claim against the named Defendants. At this juncture, the Court does not have any information as to the Defendants' knowledge, responsibilities, policies, training, etc.

to determine whether Defendants are entitled to judgment as a matter of law.

In this regard, the Prison Board is part of Blair County; it has no separate existence. Thus, Plaintiff's claim is construed as asserting liability against Blair County. Local governing bodies are deemed to be "persons" within the meaning of section 1983 and can be sued directly under the act for monetary, declaratory, or injunctive relief. Monell v. Department of Social Services, 436 U.S. 658 (1978). To establish municipal liability plaintiff must: 1) demonstrate the existence of an unlawful policy or custom, and 2) prove that the municipal practice was the proximate cause of his injury. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). A municipality is liable "where the municipality itself causes the constitutional violation at issue." Canton v. Harris, 489 U.S. 378, 385 (1989).

Here, Plaintiff has set forth allegations to establish liability against Blair County on the basis of its failure to properly train or supervise its correctional officers concerning their responsibilities in overseeing prisoner safety while confined in the Blair County Courthouse. Specifically, he contends that Blair County should have had a policy to ensure the safety of incarcerated police officers. This allegation is sufficient to withstand a motion to dismiss.

With respect to Warden Ott, a supervising official may be found liable under section 1983 for knowingly permitting a continuing custom or policy that results in harm to the

plaintiff.  Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). In order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinates' violations.  *See* Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Here, Plaintiff responded to Defendants' Motion that he seeks to hold Warden Ott liable for failing to impose safety measures to protect incarcerated police officers and for failing to train his employees in such safety measures.  Such allegations are sufficient to state a claim for relief against Warden Ott.

With respect to the remaining Defendants, Plaintiff alleges they all had knowledge that he was police officer and had safety concerns.  This Court cannot determine at this stage what each individual had specific knowledge of and what responsibilities each had in ensuring Plaintiff's safety. Consequently, Defendants' Motion to Dismiss should be denied.

**III.     CONCLUSION**

It is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 19) should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are

allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                                          Lisa Pupo Lenihan
                                          U.S. Magistrate Judge

May 25, 2007

cc.       The Honorable Kim R. Gibson
          United States District Judge

          Mark Cummins Frailey
          1137 Dorum Avenue
          State College, PA  16801